**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOE L. WILLS,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES PAROLE COMMISSION<br>and COURT SERVICES AND OFFENDER<br>SUPERVISION AGENCY FOR THE<br>DISTRICT OF COLUMBIA,<br><br>                    Defendants. | Civil Action No. 11-01464 (BAH)<br>Judge Beryl A. Howell |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Joe Wills has never been convicted of a sex offense.  Yet, after serving time in prison following a conviction for two misdemeanor drug offenses, he was informed that the United States Parole Commission ("Parole Commission") had imposed a "Special Sex Offender Aftercare Condition" ("SOA") on his supervised release.  The SOA, which he was given no opportunity to appeal, required him to participate in mental health treatment, with a focus on long-term sex offender testing and treatment.  A requirement of the SOA was that the plaintiff was "expected to acknowledge [his] need for treatment."  Compl. ¶ 37.  While undergoing sex offender treatment as part of his supervised release, the plaintiff was convicted of drug possession and served additional time in prison.  Following his release from prison, the Parole Commission re-imposed the SOA at the request of the Court Services and Offender Supervision Agency for the District of Columbia ("CSOSA").  The plaintiff then brought suit against the Parole Commission and CSOSA (collectively, "the defendants") alleging violations of the "reasonably related" standards for supervised release conditions set forth in D.C. Code § 24-403.01(b)(6) and 18 U.S.C. § 3583(d) as well as the plaintiff's Fifth Amendment right to

1

substantive and procedural due process and his First Amendment right to refrain from speaking. The plaintiff also sought preliminarily and permanently to enjoin enforcement of the SOA, which he argues is "not only unnecessary to [his] rehabilitation, but is actively impeding it."  Compl. ¶ 10.

Shortly after the plaintiff filed his Complaint, the Parole Commission withdrew the SOA from the plaintiff's supervised release.  The plaintiff then moved for partial summary judgment on his claim that the Parole Commission violated his Fifth Amendment right to procedural due process by imposing the SOA without providing the plaintiff adequate process.  The defendants subsequently moved to dismiss this action for lack of jurisdiction, arguing that the case is now moot following the withdrawal of the SOA.  For the reasons explained below, the Court denies the defendants' Motion to Dismiss and grants the plaintiff's Motion for Partial Summary Judgment.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Supervised Release in the District of Columbia

Individuals, like the plaintiff, who are subject to supervised release in the District of Columbia are "subject to the authority of the United States Parole Commission until completion of the term of supervised release."  D.C. CODE § 24-403.01(b)(6).  The Parole Commission has "the same authority" over the District of Columbia's supervised releasees "as is vested in the United States District Courts by 18 U.S.C. § 3583(d)-(i)."  *Id.*

The Parole Commission may impose special conditions on a period of supervised release, so long as those conditions meet four requirements: "(1) the conditions must be 'reasonably related' to the nature and circumstances of the supervisee's instant offense; (2) they must be 'reasonably related' to the supervisee's history and characteristics; (3) they must be 'reasonably related' to the sentencing goals of deterrence, protection of the public, and rehabilitation; and (4)

they must 'involve[ ] no greater deprivation of liberty than is reasonably necessary' to achieve those same sentencing goals."  Compl. ¶ 25 (citing 18 U.S.C. § 3583(d)).

CSOSA is responsible for "supervis[ing] any offender who is released from imprisonment for any term of supervised release imposed by the Superior Court of the District of Columbia."  D.C. CODE § 24-133(c)(2).

### B.   Special Conditions Imposed on the Plaintiff's Supervised Release

The plaintiff is an indigent and unemployed resident of the District of Columbia serving a 52-month period of supervised release, set to expire on or about April 1, 2015.  Compl. ¶¶ 3, 9, 19.

The plaintiff, who has no home of his own and depends on his mother and brother for support, has never been convicted of a sex offense.  In 1984, 28 years ago, when the plaintiff was 26 years of age, he was accused, but not convicted, of sexual misconduct when he was charged in the D.C. Superior Court with assault with intent to rape.  In that case, the plaintiff entered a guilty plea to two misdemeanor offenses: attempted second degree burglary and theft of property of a value less than $250.  *Id.* ¶ 28.  The government, in turn, dismissed the greater counts of second degree burglary and felony theft, and dismissed entirely the count for assault with intent to rape.  *Id.*  The plaintiff claims that, since 1984, he "has never again been accused of any charge that even hinted at sexual misconduct or sexual deviance."  *Id.* ¶ 30.

Over 20 years after the government dropped the assault with intent to rape charge, on November 29, 2007, the plaintiff pled guilty in D.C. Superior Court to two misdemeanor counts: one count of possession with intent to distribute cocaine and one count of possession with intent to distribute marijuana.  *Id.* ¶ 32.  The misdemeanor offenses in no way related to sexual misconduct.  For those drug offenses, the plaintiff was sentenced to 14 months of incarceration

3

followed by 5 years of supervised release.  *Id.*  As noted, this lawsuit relates to a condition imposed on the plaintiff's supervised release, namely the SOA.

### 1.    Notice of the SOA Imposed on Supervised Release

On January 30, 2009, the day he was released from the halfway house, the plaintiff was informed in writing that the Parole Commission was imposing a SOA as a condition of his supervised release.  *Id.* ¶¶ 36, 38.  Although the notice informed the plaintiff of the SOA, he was unable to read the notice at the time due to his illiteracy.  *Id.* ¶ 38.  While the Parole Commission provided the plaintiff written notice of the SOA, CSOSA was also apparently still not aware of the condition.  Upon his release from the halfway house, CSOSA placed the plaintiff into a "General Supervision Unit" rather than the "Sex Offender Unit," which is for individuals subject to the SOA.  *Id.* ¶ 36.

In February of 2009, CSOSA transferred the plaintiff to its Sex Offender Unit for his supervised release supervision.  *Id.* ¶ 40.  This transfer allegedly came as a surprise to the plaintiff, who had not been able to read the notice given to him on January 30, 2009.  *Id.* ¶ 41 (quoting Ex. 7) ("Mr. Wills is confronted with his NOA dated 1/6/09 and the special conditions added.  He was unaware of any other than drug aftercare.").  The plaintiff had not received an earlier Notice of Action ("NOA") issued by the Parole Commission informing him of the SOA.[1]

---

[1] The Parole Commission had attempted to inform the plaintiff of the imposition of the SOA prior to January 30, 2009.  Less than a month before the plaintiff was to begin supervised release, on January 6, 2009, the Parole Commission issued a NOA stating that, upon release from incarceration later that month, the plaintiff would be subject to the "Special Sex Offender Aftercare Condition."  Compl. ¶ 37.  The NOA explained that:

> In the case of the above-named, the following action was ordered: . . . [Y]ou shall be subject to the Special Sex Offender Aftercare Condition.  You shall participate in an in-patient or out-patient mental health program as directed by your [CSOSA] Supervision Officer, with special emphasis on long-term sex offender testing and treatment.  You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

Compl. ¶ 37 (quoting Ex. 4).  The NOA did not explain the basis for the Parole Commission's imposing the SOA, and, in any case, the plaintiff never received the NOA because the Parole Commission erroneously sent the NOA to

Instead, the plaintiff had only received notices from CSOSA about supervised release conditions, and those notices did not inform him about the SOA.[2]

For at least a month after the Parole Commission imposed the SOA on the plaintiff, neither the Parole Commission nor CSOSA were able to articulate a justification for the imposition of the SOA.  For example, a recorded entry by the plaintiff's CSOSA supervisor officer in February 2009 stated that:

> [Parole Commission] [c]ase analyst Corey Mitchell returns this officer's telephone call concerning the [Parole Commission NOA] dated 1/6/09.  He confirms that they too have the same conditions ordered but have no reasons listed just as this officer has no reasoning on the form.

Compl. ¶ 39 (quoting Ex. 5).  In February 2009, the plaintiff's supervising officer informed the plaintiff for the first time of the possible basis for the special condition: the 1984 charge against him of assault with intent to rape, which had been dismissed in 1986.  *Id*. ¶¶ 27-28; *id*. ¶ 42 (quoting Ex. 7) ("Offender is informed that [the condition] may have been added due to past 'assault with intent to rape' charge that was dismissed.  Mr. Wills is told that further contact will be made to [the Parole Commission] to confirm these special conditions but that Mr. Mitchell from [the Parole Commission] confirmed that they were in fact there.").

---

the Federal Medical Center in Rochester, Minnesota, where the plaintiff had previously been imprisoned, rather than to Hope Village, the halfway house where the plaintiff was living.  Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem."), ECF No. 14, at 3; Defs.' Opp'n to Pl.'s Mot. for Partial Summ. J. ("Defs.' Opp'n"), ECF No. 17, at 31.  Thus, the plaintiff did not learn of the SOA until he was already subject to the condition.

[2] On January 9, 2009, for example, three days after the Parole Commission issued the NOA, CSOSA provided the plaintiff with a set of supervised release reporting instructions, which stipulated that the plaintiff would only be subject to one special condition, namely drug testing.  Compl. ¶ 34.  These CSOSA instructions were consistent with CSOSA's presentence report filed with the sentencing court in that they made no mention of sex offender treatment as a condition of the plaintiff's release.  *Id*. ¶ 33.  Likewise, on January 29, 2009, CSOSA, one day prior to the beginning of the plaintiff's supervised release, issued a "Pre-Release Investigative Report" noting the absence of sex offenses in the plaintiff's record and not recommending mandatory sex offender treatment.  *Id*. ¶ 35.

### 2.    Requirements of the SOA Imposed on the Plaintiff

The plaintiff alleges that, soon after his transition to supervised release and subsequent transfer to the Sex Offender Unit, CSOSA "began to enforce" the SOA.  Compl. ¶ 45.

On March 9, 2009, the plaintiff's supervising officer required the plaintiff to disclose the "nature of [his] sexual offense" to his then-girlfriend, with whom he was residing at the time.  *Id*. ¶ 43 (quoting Ex. 8).  In May 2009, the supervising officer met the plaintiff's girlfriend in person to confirm that the plaintiff had complied with this directive.  *Id*. ¶ 44.  The plaintiff alleges that this "compelled disclosure of inaccurate information caused a significant strain in Mr. Wills' relationship with his girlfriend" and that he is no longer in a relationship with this woman.  *Id*.; Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. ("Pl.'s Mem."), ECF No. 12, at 6.

CSOSA also scheduled the plaintiff for an "assessment package," consisting of six sessions with a treatment provider at the Center for Clinical and Forensic Services ("CCFS"), as well as two polygraph examinations.  Compl. ¶ 46.  The plaintiff was also expected to undergo twelve additional sex offender treatment sessions with CCFS, which were intended to provide the basis for the plaintiff's "clinical diagnosis" and "comprehensive treatment plan."  *Id*. ¶¶ 46-47.

During the initial session with a treatment provider on September 14, 2009, the plaintiff, who was forced to waive his right to therapist-patient confidentiality as part of the SOA, was subject to a "psychosexual assessment," which consisted of a series of questions about his sexual history, desires, and practices.  *Id*. ¶ 48.[3]  Following this psychosexual assessment, on October

---

[3] In the course of the session, the plaintiff was asked, *inter alia*:

    a.     whether he describes himself as homosexual, heterosexual, or bisexual;
    b.     what sexual experiences he had prior to the age of 10;
    c.     at what age he first masturbated, and the number of times per day and per week he masturbated at the height of his masturbation;
    d.     at what age he first had sexual intercourse, and how many partners he has had;

27, 2009, after again waiving confidentiality, the plaintiff was forced to undergo a polygraph examination regarding his answers to the questions posed in the psychosexual assessment. *Id.* ¶ 49.[4]

The plaintiff thereafter attended numerous sex offender treatment sessions. *Id.* ¶ 51. According to the plaintiff, the treatment providers "repeatedly pressured him" during those sessions to acknowledge his need for the sex offender treatment, "saying that it would make him feel better." *Id.*

### C.     2011 Re-Imposition and Enforcement of the SOA

On December 7, 2009, while under supervised release, the plaintiff was arrested for drug possession. *Id.* ¶ 52.  He was subsequently convicted in the D.C. Superior Court of misdemeanor possession of cocaine and drug paraphernalia, and the Parole Commission revoked his supervised release on June 18, 2010.  *Id.*  The plaintiff served a term of imprisonment until December 1, 2010, when he began a new 52-month term of supervised release.  *Id.*

This time, the Parole Commission did not immediately impose the SOA.  *Id.* ¶ 53. CSOSA, however, immediately placed the plaintiff back into the Sex Offender Unit.  *Id.*  The

---

e.      the level of sexual confidence he felt as an adolescent;
f.      the varieties of sex he has engaged in, including vaginal, anal, oral, and sadomasochistic;
g.      numerous aspects of his sexual interactions with consenting adult partners, done in private;
h.      at what age he first viewed pornography, and how frequently he looks at pornography;
i.      whether he has ever suffered from impotence, or from a sexually transmitted disease;
j.      how stimulated he would be by fantasizing about, among other things, seeing an attractive boy under age 12; engaging in anal sex; having sex with a prostitute; looking through a window at a masturbating woman; and watching two men have sex;
k.      the number of times that he has stolen underwear;
l.      the number of times that he has cross-dressed; and
m.      the number of times that he has had sexual contact with a dead animal or person.

Compl. ¶ 48.

[4] While the polygraph indicated "deception" in the plaintiff's answers to two out of three questions "regarding sexual contact via force or non-consent," the polygraph examiner reported that Mr. Wills attributed his difficulty with polygraph examinations to "hypervigilance (as a result of illiteracy and serious medical concerns)" and noted that "Mr. Wills' report on hypervigilance seems reasonable."  Compl. ¶ 50 (quoting Ex. 14).  The plaintiff has denied forcing anyone to have sexual contact with him.  *Id.*

plaintiff's supervising officer at CSOSA then informed the plaintiff that CSOSA was going to petition the Parole Commission to again impose the SOA.  *Id*. ¶ 54.

The plaintiff, with the help of his reading instructor, wrote a letter to the Parole Commission on June 2, 2011, objecting to the re-imposition of the SOA, stating that, "I do not believe that I should be subject to this condition because I have never been convicted of a sex crime and am therefore not in need of treatment for sex offenders."  *Id*. ¶ 55 (quoting Ex. 16).

The plaintiff's supervising officer at CSOSA, meanwhile, petitioned the Parole Commission to add the SOA as a condition of the plaintiff's supervised release.  *See* Compl. ¶ 56 (excerpting the CSOSA officer's recommendation):

> Mr. Wills was released to supervision on December 1, 2010 and was assigned to the Special Sex Offender Supervision Unit due to his being charged with Assault with Intent to Rape [in 1984].  This charge was dismissed on January 30, 1986. However, according to CSOSA policy, he will be supervised in the Sex Offender Unit until a complete risk and needs assessment can be conducted.

Compl. ¶ 56 (quoting Ex. 16).

In a NOA dated June 24, 2011, the Parole Commission granted CSOSA's request, thereby re-imposing the SOA.  *Id*. ¶ 57.  On July 25, 2011, the plaintiff was informed by his CSOSA supervising officer that his sex offender treatment would begin again and would include, *inter alia*, another psychosexual assessment (over the course of three sessions), followed by one or more polygraph examinations and thirteen individual treatment sessions.  *Id*. at 58.[5]

---

[5] According to CSOSA's Policy Manual, the prescribed "comprehensive treatment" for the plaintiff may also include "[c]ognitive behavioral group therapy," "[u]se of techniques for reducing deviant sexual arousal, such as covert sensitization, aversive conditioning and/or hormonal therapy," and forced "physiological monitoring," including a device placed on his sexual organ to monitor changes in blood flow, and polygraphs.  Compl. ¶ 60 (quoting Ex. 13, at 14-15).  In addition, after the plaintiff undergoes sex offender treatment, CSOSA's Policy Manual states that he "shall be placed into aftercare for an indefinite period of time," which shall "consist minimally of maintenance polygraph exams every 12 months."  *Id*. ¶ 61 (quoting Ex. 13, at 13-14).

The Parole Commission informed the plaintiff that the Parole Commission's decision to re-impose the SOA "is not appealable to the Commission's National Appeals Board." *Id.* ¶¶ 57, 62.

With no other administrative appeal possible, the plaintiff filed suit in the U.S. District Court for the District of Columbia, claiming that the defendants violated his Fifth Amendment procedural and substantive due process rights, his First Amendment protection against compelled speech, and the "reasonably related" standard that governs conditions of supervised release in the District of Columbia under D.C. Code § 24-403.01(b)(6) and 18 U.S.C. § 3583(d). *Id.* ¶¶ 11-14. In his Complaint, the plaintiff requested that the Court preliminarily and permanently enjoin enforcement of the SOA. Compl. at 18; Pl.'s Mot. for Prelim. Inj., ECF No. 2. Soon after the plaintiff filed his Complaint, the Parole Commission unilaterally removed the SOA on September 7, 2011, whereupon the plaintiff  withdrew his Motion for Preliminary Injunction. *See* Pl.'s Notice of Withdrawal of Mot. for Prelim. Inj., ECF No. 6. The plaintiff then moved for partial summary judgment on his Fifth Amendment procedural due process claim, through which he seeks a declaratory judgment that the Parole Commission imposed the SOA in violation of his procedural right to due process. *See* Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mot"), ECF No. 12. The defendants subsequently moved to dismiss the claim as moot. Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 14. Those two motions are now pending before the Court.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction

A court must dismiss a case when it lacks subject-matter jurisdiction. *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007); Fed. R. Civ. P. 12(b)(1). The "[p]laintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Am. Farm Bureau v. U.S. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000); *accord Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The Court must be assured that it is acting within the scope of its jurisdictional authority and therefore must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim.  *See Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Westberg v. FDIC*, 759 F. Supp. 2d 38, 41 n.1 (D.D.C. 2011); *Dubois v. Wash. Mut. Bank*, No. 09-2176, 2010 WL 3463368, at *2 (D.D.C. Sept. 3, 2010); *Hoffman v. District of Columbia*, 643 F. Supp. 2d 132, 135-36 (D.D.C. 2009); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001).  In evaluating subject-matter jurisdiction, the Court, when necessary, may look beyond the complaint to "undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Alliance for Democracy v. Fed. Election Comm'n*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005).

Under Article III of the United States Constitution, this Court "may only adjudicate actual, ongoing controversies."  *District of Columbia v. Doe*, 611 F.3d 888, 894 (D.C. Cir. 2010) (citation omitted).  The mootness doctrine "prohibits [this Court] from deciding a case if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  *Id.* (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)).

There are, however, two well-recognized exceptions to mootness.  "The first pertains to situations in which 'the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration,' yet there is a 'demonstrated probability that the same controversy will recur involving the same complaining party.'"  *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 647 (D.C. Cir. 2011) (quoting *Murphy v. Hunt,* 455 U.S. 478, 482 (1982) (per curiam)).  "The second

exception involves a party's 'voluntary cessation' of the challenged activity[,]" which generally "does not deprive [a court] of power to hear and determine the case." *Id*. at 648 (citation omitted).

The first exception, sometimes referred to as the "capable of repetition, yet evading review" exception, applies where: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). When these "two circumstances [are] simultaneously present," the plaintiff has demonstrated an "exceptional situation[ ]," in which the exception will apply. *Spencer v. Kemna*, 523 U.S. 1, 17 (1998). "[T]he exception is well established[,]" with the "'evading review' aspect . . . suggesting justiciability by necessity" and the "'capable of repetition' aspect assuring that the parties have a sufficient interest in the result." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) (citation omitted).

Under the second exception, sometimes referred to as the "voluntary cessation" exception, cases will be found moot only when: (1) "there is no reasonable expectation . . . that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citations and internal quotation marks omitted); *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008). In these cases, a defendant's "voluntary cessation of allegedly illegal conduct does not deprive [a court] of power to hear and determine the case." *County of Los Angeles*, 440 U.S. at 631. "If it did, the courts would be compelled to leave the defendant . . . free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citations and internal quotation marks omitted).

"The defendant carries the burden of demonstrating that there is no reasonable expectation that the wrong will be repeated," and "[t]he burden is a heavy one." *Am. Bar Ass'n*, 636 F.3d at 648 (citation omitted); *see also Friends of the Earth,* 528 U.S. at 189 ("A case might become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." (emphasis added) (citation omitted)).

### B.        Motion for Partial Summary Judgment

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Pursuant to the mandatory language of Rule 56, the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation and internal quotation marks omitted).  The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute.  *Id*. at 323. Thus, at the summary judgment stage, all justifiable inferences must be drawn in favor of the non-moving party to the extent supportable by the record.  *Scott v. Harris,* 550 U.S. 372, 381 n.8 (2007); *see also United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) (per curiam).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position[, however,] will be insufficient; there must be evidence on which the jury could reasonably find" in favor of the non-moving party.  *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

III.    **DISCUSSION**

A.      **The Plaintiff's Challenge Is Not Moot.**

The defendants contend that "the Court is unable to grant Plaintiff any meaningful relief" because "[t]he case and controversy upon which Plaintiff seeks relief . . . has been resolved" because the Parole Commission has removed the SOA from the plaintiff's supervised release. Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem."), ECF No. 14, at 7. The plaintiff argues, however, that the case is not moot, and the Court retains jurisdiction, under "[t]he voluntary cessation exception to the mootness doctrine [which] precludes Defendants from so easily escaping judgment." Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 19, at 2. The plaintiff also characterizes the special condition of his supervised release as an action "capable of repetition, yet evading review." *Id*. at 27. If either of these two exceptions, as described *supra*, applies, this Court must deny the defendants' motion to dismiss. The Court, as explained below, concludes that the voluntary cessation exception applies and the Court has subject-matter jurisdiction over the plaintiff's claims.[6]

To escape the voluntary cessation exception, the defendants must rebut "an evidentiary presumption that the controversy reflected by the violation of alleged rights continues to exist." *Friends of the Earth*, 528 U.S. at 213. The case will be rendered moot only if defendants can demonstrate *both* (1) that "there is no reasonable expectation . . . that the alleged violation will recur" and (2) that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles*, 440 U.S. at 631 (citations and internal quotation marks omitted). As explained below, the defendants cannot demonstrate that both of these conditions are satisfied.

---

[6] Since the Court finds that the voluntary cessation exception applies, it need not address whether the "capable of repetition, yet evading review" exception also applies.

### 1. The Defendants Cannot Demonstrate that There is No Reasonable Expectation that the Alleged Violation Will Recur.

The defendants assure the Court that "there is nothing in the record to demonstrate . . . that Plaintiff will be subjected to the SOA treatment provisions again once this case is dismissed[,]" Defs.' Mem. at 16, and that they "[do] not expect the Commission to re-impose the SOA special condition of release based on the information concerning Plaintiff's 1984 arrest for Assault with Intent to Rape, and on the current state of Plaintiff's criminal history." *Id*. at 8.  In support of this contention, they rely on two declarations, one from CSOSA's Associate Director for Community Supervision Services, Thomas Williams, and the other from a Parole Commission Deputy Case Services Administrator, Kenneth Holland, that state that the SOA will not be re-imposed. *See* Declaration of Kenneth Holland, dated Oct. 17, 2011, ECF No. 14-11 ("Holland Decl.") ¶ 8 ("[B]ecause the Commission determined that it was not necessary to continue imposing the sex offender condition, based on its review of the information relating to his 1984 charge of assault with intent to commit rape, and because Mr. Wills has not committed any sex-related offenses since that time, I do not expect that the Parole Commission will re-impose the special sex offender condition unless new sexual misconduct by Mr. Wills were to raise a legitimate concern that such condition would become newly necessary."); Declaration of Thomas H. Williams, dated Oct. 17, 2011, ECF No. 14-12 ("Williams Decl.") ¶ 9 ("Based on Mr. Wills' current criminal record, CSOSA will not recommend re-imposition of the Sexual Offender Aftercare special condition of release.  However, if CSOSA learns of new sexual misconduct being committed by Mr. Wills, CSOSA will recommend the re-imposition of this condition to the Parole Commission.").

Mere assurances that challenged conduct will not recur, however, have never been enough to sustain the "heavy" burden borne by defendants in invoking the mootness doctrine.

*United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) ("[D]isclaim[ing] any intention . . . does not suffice to make a case moot"); *In re Ctr. for Auto Safety*, 793 F.2d 1346, 1352 (D.C. Cir. 1986) (applying the voluntary cessation exception and holding case not to be moot when "[t]he only assurance we have that the agency has permanently ceased its pattern of tardy fuel economy standards" is the agency's own "bald assertion").  The plaintiff suggests in particular that this Court's voluntary cessation ruling in *Goings v. Court Servs. & Offender Supervision Agency*, 786 F. Supp. 2d 48 (D.D.C. 2011), and a similar ruling by another Judge in this Circuit in *Jackson v. U.S. Parole Comm'n*, 806 F. Supp. 2d 201 (D.D.C. 2011), are guiding precedent on this mootness point.  *See* Pl.'s Opp'n at 8.  The Court agrees.

In *Goings*, this Court concluded that voluntarily withdrawn probation conditions were not moot because they could be re-imposed at will by CSOSA.  *Goings*, 786 F. Supp. 2d at 63 ("CSOSA remains free to re-impose conditions . . . at any point in the future.").  In that case, CSOSA had imposed seventeen special conditions of release on the plaintiff, including conditions ordering the plaintiff "to undergo sex offender therapy, to wear a GPS tracking device, not to possess a computer without CSOSA permission, not to loiter near places trafficked by minors, and not to seek employment or participate in activities that involve minors."  *Id*. at 53, 59 n.4.  CSOSA also "ban[ned] him from any contact with his children."  *Id*. at 53.  After the plaintiff challenged these conditions, the defendant agency revoked the condition banning the plaintiff from owning and using a computer and modified the condition banning him from contacting his children.  *Id*. at 58.  Notwithstanding these rescissions, this Court held that the voluntary cessation exception to mootness applied.  *Id*. at 61-63.

The defendants' attempts to distinguish *Goings* are unpersuasive.  First, the defendants attempt to differentiate the instant case on the basis that the single, challenged parole condition has been "unconditionally lifted" in this case while many were left in place in *Goings*, where

"CSOSA only modified some of the challenged conditions of release." Defs.' Mem. at 17-18. But this Court plainly anticipated and rejected that argument in *Goings*, finding that case justiciable "because the defendant only modified a portion of the Challenged Conditions, and, *even with respect to the modified conditions*, the Court is authorized to adjudicate the plaintiff's claims because the defendant's subsequent modification of the conditions amounts to a voluntary cessation." *Goings*, 786 F. Supp. 2d at 61 (emphasis added); *see also Jackson*, 806 F. Supp. 2d at 207 (noting that "the Court in *Goings* was clear that even those conditions that had been altered could be 're-impose[d],' and, therefore, the defendants had failed to show that there was 'no reasonable expectation that the alleged violation will recur.'") (quoting *Goings*, 786 F. Supp. 2d at 63). Second, the defendants argue that the officials in *Goings* left open the possibility of re-imposing the challenged conditions at any time, while the defendants in the instant case, to the contrary, maintain that they have "unconditionally lifted the single condition of release that Plaintiff is challenging" and removed the plaintiff's case from the Sex Offender Unit. Defs.' Mem. at 18. The "unconditional" nature of that rescission, however, is belied in the very next sentence of their motion, where defendants concede that there are conditions which would result in the SOA being re-imposed on the plaintiff. The defendants note, for example, that the "Deputy Case Administrator[ ] attests that the Commission will not seek to re-impose this condition *unless* Plaintiff commits a new act of sexual misconduct." *Id*. (emphasis added). Not only does the attestation leave undefined what would constitute a "new act of sexual misconduct," but also it does not indicate what bearing, if any, information from the plaintiff's 1984 arrest would have on making this evaluation. The employees' conditional assurances are simply insufficient to distinguish the instant case from *Goings*.

Finally, and notably, even if such assurances were sufficient to sustain the burden that the challenged conduct will not recur, the declarations from CSOSA and the Parole Commission

officials containing the declarations are utterly unpersuasive.  As to the CSOSA declaration, the plaintiff argues persuasively that Mr. Williams lacks the requisite authority to make such a guarantee.  Since, in this case, CSOSA is merely the administrator of parole conditions "impose[d] and modif[ied]" under the "plenary authority" of the Parole Commission, CSOSA employee Mr. Williams cannot speak to "the Parole Commission's position on the matter."  Pl.'s Opp'n at 7 (citing D.C. CODE § 24-403.01(b)(6); *Denson v. United States*, 918 A.2d 1193, 1195 (D.C. 2006)).[7]  Therefore, "the [most] pertinent declaration comes from Mr. Holland."  *Id.* at 8. Mr. Holland's declaration, however, is also not persuasive as he is a Deputy Case Services Administrator whose duties include "making recommendations to the Parole Commission concerning conditions of supervision for releasees under the Commission's jurisdiction." Holland Decl. ¶ 2.  Since his role is to "make recommendations to the Parole Commission," rather than to make the decision about whether special conditions are imposed as a condition of an individual's supervised release, his assurances are not sufficient to sustain the heavy burden required of defendants to invoke the mootness doctrine.

In *Jackson*, another Judge in this Circuit held that a parolee's challenge to the special conditions of his parole was not rendered moot merely because the Parole Commission withdrew the special conditions while the litigation was still pending.  There, too, the Parole Commission offered the assurances of a Case Services Administrator that the Commission would not re-impose the challenged conditions.  *Jackson*, 806 F. Supp. 2d at 206.  The *Jackson* court rejected those assurances:

> Defendants do not allege that they have altered their procedures for
> imposing special parole restrictions or that the type of restrictions they

---

[7] This is another way in which this case is distinguishable from *Goings*, where the plaintiff's conditions of release were determined by CSOSA.  As this Court explained in *Goings*, "in contrast to in-state offenders whose conditions of probation or supervised release are set by the Superior Court of the District of Columbia or the U.S. Parole Commission, respectively, out-of-state offenders [in the District of Columbia, such as Goings] are subject to conditions set by their original sentencing court and . . . by CSOSA."  *Goings*, 786 F. Supp. 2d at 69.

> impose have changed.  Nor do they promise to refrain from imposing those restrictions on Jackson.  All defendants offer is a declaration from a [Parole Commission] administrator stating that she "does not expect" the parole officer supervising Jackson to request that the special parole restrictions be re-imposed.

*Id*. at 208.  The defendants' attempts to distinguish *Jackson* are unavailing.  In the defendants' reading of *Jackson*, it was "the Parole Commission's withdrawal of the SOA condition without explanation, and the lack of comment by the agency regarding the circumstances under which it would seek to re-impose the conditions" that defeated the Parole Commission's mootness challenge there.  Defs.' Mem. at 19.  In the instant case, by contrast, the defendants assert that the Parole Commission withdrew the special condition based on "information it received concerning the facts of [the plaintiff's] arrest in 1984," and that they would only re-impose this condition under narrow, explicitly defined circumstances.  *Id*.  The defendants also contend that their "review[ of] Plaintiff's record and new information regarding Plaintiff's arrest in 1984" undercuts any inference that their rescission was merely "a means for [the Parole Commission] to avoid litigation in this case."  *Id*. at 19-20 n.5.

The Parole Commission's suggestion, however, that it is unlikely to re-impose the SOA "because [the plaintiff] has not committed any sexual offenses since [1984]," Holland Decl. ¶ 8, does not inspire confidence.  After all, it is difficult to imagine how the Parole Commission could have missed this fact the last two times it imposed the SOA on the plaintiff.  While the Court does not deny the propriety of agencies' reviewing their own records to "correct [their] own errors," *McKart v. United States*, 395 U.S. 185, 195 (1969), none of the defendants' assurances persuade the Court that the defendants' rescission is anything other than an attempt to avoid judicial review.

Moreover, the defendants' attempts to distinguish *Jackson* are especially unconvincing given the very similar language that the Parole Commission used to provide assurances to the

plaintiffs in *Jackson* and the instant case.  In *Jackson*, "Case Services Administrator" Deirdre

Jackson "attested that she 'd[id] not expect' that the parole officer supervising Mr. Jackson

would request that the Commission re-impose the challenged sex offender conditions 'unless

new sexual misconduct by Mr. Jackson were to raise a legitimate concern that such condition(s)

have become newly necessary.'"  Pl.'s Opp'n at 10-11 (citing Ex. 1, Declaration of Deirdre

Jackson, dated June 29, 2011, ECF No. 19-1 ("Jackson Decl.") ¶ 2).  Similarly, in the instant

case, Mr. Holland "attested that he 'do[es] not expect' that the Commission will re-impose the

Special Sex Offender Aftercare Condition 'unless new sexual misconduct by [the plaintiff] were

to raise a legitimate concern that such condition ha[s] become newly necessary.'"  *Id*. at 11.  The

Court sees no basis for distinguishing these cases based on the assurances of the Parole

Commission.

Accordingly, the Court concludes that the defendants have not met their "heavy burden of

persuading the court that the challenged conduct cannot reasonably be expected to start up

again."  *Friends of the Earth*, 528 U.S. at 189 (citation and internal quotation marks omitted), as

the defendants have offered nothing more than their employees' "bald assertion[s]," *In re Ctr. for

Auto Safety*, 793 F.2d at 1352, that they will not re-impose the SOA absent a certain triggering

circumstance.  Thus, the challenged SOA cannot escape judicial review simply because of the

Parole Commission's withdrawal of the SOA in the face of pending litigation.

> **2.    The Court Need Not Reach the Question of Whether the Interim
>         Relief or Events Have Completely and Irrevocably Eradicated the
>         Effects of the Alleged Violation.**

The plaintiff also contends that "the 'stigmatizing effects' of his classification and

treatment as a sex offender" have not been "completely and irrevocably eradicated."  Pl.'s Opp'n

at 27 (citing *Am. Bar Ass'n v. FTC*, 636 F.3d at 648).  The defendants argue that "[t]he record

shows that this condition is no longer being imposed in Plaintiff's case, and he is no longer under

the supervision of the sex offender unit,"; consequently, the "[p]laintiff has not successfully established that the harm he suffered – being ordered to participate in sex offender treatment while under supervision in CSOSA's Sex Offender Unit – has not been eradicated."  Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Defs.' Reply"), ECF No. 22, at 8.  The Court need not reach this question.

"When *both conditions* [of the voluntary cessation doctrine] are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law."  *County of Los Angeles*, 440 U.S. at 631 (emphasis added).  Since the defendants have failed to meet their burden of demonstrating that the alleged violation has no reasonable likelihood of recurrence, they cannot satisfy both conditions necessary to render this case moot.  While the Court finds, *infra*, that the plaintiff has indeed suffered injury to a legally cognizable liberty interest, whether that injury has been "completely and irrevocably eradicated" in the interim is immaterial to the disposition of this motion.

**B.      Partial Summary Judgment in Favor of the Plaintiff is Appropriate.**

The Court now turns to the plaintiff's request for partial summary judgment on his Fifth Amendment procedural due process claim.  The plaintiff contends that the SOA "has stigmatized him with the inaccurate label of 'sex offender'" and that "the Parole Commission imposed the condition without providing [him] a meaningful explanation for its alleged necessity or a meaningful opportunity to contest it."  Pl.'s Mem. at 2.  The defendants counter that the "[p]laintiff has not established that his procedural due process rights were implicated pursuant to the facts of this case, or that the current procedural framework used by the Parole Commission to impose a condition of release and to allow Plaintiff the opportunity to challenge its imposition is

constitutionally deficient."  Defs.' Opp'n to Pl.'s Mot. for Partial Summ. J. ("Defs.' Opp'n"),

ECF No. 17, at 2.

For the reasons explained below, the Court will grant the plaintiff's motion for partial

summary judgment.  The Court will first examine the "threshold question" of whether the

government action "implicates a liberty interest that is protected by the Due Process Clause."

*Vitek v. Jones*, 445 U.S. 480, 487 (1980).  Since this Circuit has yet to consider a due process

challenge by a parolee on stigmatization grounds, the Court will look to the consensus among

other circuits for guidance.  The Court will then turn to the second step of due process analysis

and "examine[ ] whether the procedures attendant upon that deprivation were constitutionally

sufficient."  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citation omitted).  The

Court, as explained below, concludes that the Parole Commission's imposition of the SOA

implicates a liberty interest, and that the procedures attendant upon the plaintiff's deprivation of

his liberty interest were not constitutionally sufficient.

### 1.     The Parole Commission's Actions Implicated a Liberty Interest.

"To maintain a procedural due process claim, the plaintiff must establish that the

government has deprived him of a liberty interest."  *Goings*, 786 F. Supp. 2d at 73.  Individuals

on probation or parole "do not enjoy the absolute liberty to which every citizen is entitled, but

only . . . conditional liberty properly dependent on observance of special [probation]

restrictions."  *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (citation and internal quotation

marks omitted).  Nevertheless, "a parolee's liberty involves significant values within the

protection of the Due Process Clause."  *Morrissey v. Brewer*, 408 U.S. 471, 471 (1972).  In *Vitek

v. Jones*, 445 U.S. 480 (1980), the Supreme Court held that, "[w]hile a conviction and sentence

extinguish an individual's right to freedom from confinement for the term of his sentence,"

additional procedures are necessary before the government can impose "stigmatizing

consequences." 445 U.S. at 481 (restricting the state's ability to "to classify [a prisoner] as

mentally ill and to subject him to involuntary psychiatric treatment without affording him

additional due process protections.").

Whether the stigmatizing consequences of sex offender classification and therapy for sex

offenders implicate a liberty interest, as the plaintiff argues, is a question not yet addressed by

the D.C. Circuit. *See Chandler v. James*, 783 F. Supp. 2d 33, 43 (D.D.C. 2011) ("Several courts,

although none yet in this circuit, have found that a prisoner or parolee has a liberty interest in not

being classified as a sex offender and required to undergo psychological treatment designed for

sex offenders; consequently, before he can be so classified and ordered to submit to treatment,

the prisoner/parolee must be afforded due process."); Defs.' Opp'n at 8 ("Plaintiff is raising an

issue of first impression regarding the liberty interest possessed by those who are not convicted

sex offenders, yet who are required to undergo sex offense therapy.").[8]

While this question has not yet been directly addressed by this Circuit, other circuits

considering this issue have found a protected liberty interest in avoiding at least those

stigmatizing consequences arising *jointly* from sex offender classification or labeling *and* its

corresponding conditions.  The Third Circuit, for example, has held, in the case of a prisoner

labeled as a sex offender, that "the stigmatizing effects of being labeled a sex offender, when

coupled with mandatory behavioral modification therapy, triggers an independent liberty

interest." *Renchenski v. Williams*, 622 F.3d 315, 328 (3d Cir. 2010).  The Fifth Circuit agrees

that "the combination of stigma and compelled behavior modification treatment" implicates a

liberty interest. *Coleman v. Dretke*, 395 F.3d 216, 222 (5th Cir. 2004).  The Ninth Circuit

---

[8] This Court addressed a companion issue in *Goings*, holding that mandatory sex offender treatment, which is
substantially indistinguishable from that in the instant case, did not "implicate[ ] the plaintiff's *privacy* rights" as
those had been articulated by the Supreme Court in *Whalen v. Roe*, 429 U.S. 589 (1977), and construed in this
Circuit. *Goings*, 786 F. Supp. 2d at 74 (emphasis added).  The plaintiff's concern about his privacy rights in *Goings*,
however, is a different matter from the plaintiff's purported liberty interest in avoiding stigmatization by sex
offender classification and conditions here.

identified "stigmatizing consequences" in a program that both "label[ed] a prison inmate as a sex

offender" and mandated an "extensive" sex offender treatment program.  *Neal v. Shimoda*, 131

F.3d 818, 829 (9th Cir. 1997).  The Tenth Circuit has found a liberty interest where a prisoner

not previously convicted of a sex offense is "classified as a sex offender for purposes of a prison

treatment" and where "classification as a sex offender reduced the rate at which [a prisoner]

could earn good time credits."  *Gwinn v. Awmiller*, 354 F.3d 1211, 1218-19 (10th Cir. 2004)

(citing *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237 (10th Cir. 2000)).  The Eleventh Circuit

has also concluded that "the stigmatizing effect of being classified as a sex offender constitutes a

deprivation of liberty under the Due Process Clause," where the consequence of being classified

as a sex offender included, *inter alia*, "participat[ion] in group therapy sessions of Sexual

Offenders Anonymous as a prerequisite for parole eligibility."  *Kirby v. Siegelman*, 195 F.3d

1285, 1288, 1292 (11th Cir. 1999).

     Guided by this precedent, the Court finds in this case that the Parole Commission's

imposition of the SOA on the plaintiff's supervised release implicated the plaintiff's liberty

interest by (1) classifying the plaintiff as a sex offender, (2) publicizing his sex offender status,

and (3) mandating sex offender therapy.  These three factors jointly constitute "stigmatizing

consequences," as initially articulated by the Supreme Court in *Vitek* and subsequently applied to

sex offender classification and conditions by five other circuits.

     First, the Parole Commission essentially "classified" the plaintiff as a sex offender and

CSOSA complied with that classification.  The defendants' contention that the plaintiff was

never "formally classified as a sex offender prior to being ordered to undergo sex offender

therapy," Defs.' Opp'n at 14, is belied by the record.  The defendants assigned the plaintiff to

CSOSA's Sex Offender Unit; repeatedly coerced him to admit his "need" for the mandated sex

offender treatment; routinely generated "Adult Sex Offender Treatment Services Progress

Reports" for the plaintiff; and compelled the plaintiff to disclose the nature of his "sex offense" to his then-girlfriend.  Pl.'s Reply in Supp. of Mot. for Partial Summ. J. ("Pl.'s Reply"), ECF No. 20, at 5.  While individual jurisdictions may have requirements for formally "classifying" an individual as a sex offender, the defendants are government agencies that classified the plaintiff as a sex offender for the purposes of the SOA.

Second, the defendants deliberately publicized the plaintiff's sex offender label by mandating that he disclose his "sex offense" to his then-girlfriend, with whom he was cohabitating at the time.  Compl. ¶ 43.  The defendants concede that the plaintiff "may have suffered harm to his reputation" from the compelled disclosure, but argue that reputation alone "does not implicate a liberty interest implicated by the Due Process Clause."  Defs.' Opp'n at 18 (citing *Gunderson v. Hvass*, 339 F.3d 639, 644 (8th Cir. 2003), for the proposition that "[d]amage to reputation is not sufficient to invoke the procedural protections of the due process clause").  Yet, the defendants also acknowledge that courts have found that such a disclosure would be sufficient to create a stigma with an employer or within a prison population.  *Id.* at 17.  Aside from a simple assertion that "this level of disclosure does not rise to the level that one labeled as a sex offender must show," the defendants offer no compelling distinction between disclosure to employers or fellow inmates as opposed to friends or loved ones, and particularly one with whom the plaintiff was residing at the time.  *Id.* at 16-17.

Third, neither party disputes that the SOA "required" that the plaintiff, who was not a sex offender, "undergo sex offender treatment."  *See* Defs.' Opp'n at 15.

The Court concludes that these three factors – plaintiff's classification, disclosure, and mandated treatment as a sex offender – jointly created stigmatizing consequences implicating a liberty interest.  If the Parole Commission can classify a parolee, who has not committed a sex offense, as a sex offender, mandate intrusive psychosexual therapy, and compel embarrassing

revelations to the parolee's friends – all without rising to the level of "stigmatizing consequences" – then that well-established phrase has lost all meaning as a threshold for due process protection.  This Court will not let it be so.

> ### 2.     The Procedures Attendant Upon the Deprivation Were Not Constitutionally Sufficient.

Having identified a liberty interest, the Court proceeds to the second step of due process analysis and "examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Ky. Dep't of Corr.*, 490 U.S. at 460 (citation omitted).  If nothing else, "the opportunity to be heard 'at a meaningful time and in a meaningful manner'" – what the Supreme Court has characterized as "the fundamental requirement of due process" – encompasses at least the opportunity to be heard at all.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  The plaintiff was not given that opportunity in this case:  he "was provided no notice of any sort prior to the Commission's initial imposition of the condition[ ] in January 2009" and only "cursory process" in the form of "permi[ssion] to file a written objection to CSOSA's June 2011 request that the Parole Commission re-impose the condition."  Pl.'s Mem. at 17.  In the absence of any meaningful process[9], the Court must grant the plaintiff's motion for partial summary judgment.

The litigants offer differing interpretations of the Parole Commission's regulations regarding the right to appeal conditions of supervised release.  The defendants contend, for example, that, had the plaintiff initially received the NOA, the plaintiff would have been entitled to "submit to the National Appeals Board a written appeal," within 30 days of the NOA's

---

[9] In a time of fiscal austerity and strained resources, meaningful process to determine whether the plaintiff should have been subject to the SOA would not only have saved the plaintiff from this ordeal, but saved the Parole Commission precious resources expended on Mr. Wills' unnecessary treatment.  Providing procedures in order to more carefully target resources on individuals who need them would be more practical.

issuance, pursuant to 28 C.F.R. §§ 2.220, 2.26.  28 C.F.R. § 2.26(a); Defs.' Opp'n at 3, 21-22,

31.  The plaintiff disputes the defendants' interpretation of the regulations, noting, for example,

that "28 C.F.R. § 2.220, which Defendants say 'enables a person on supervised release to appeal

the Parole Commission's decision to impose a condition of release,' actually does not mention

imposition or modification of release conditions at all; it refers only to a right to appeal 'a

decision to revoke supervised release, impose a term of imprisonment, or impose a new term of

supervised release after revocation.'"  Pl.'s Reply at 15 n.11 (citation omitted).  While the

plaintiff acknowledges that "[n]otwithstanding the plain language of the regulation, it does

appear to be the [Parole] Commission's informal practice to allow supervised releasees to appeal

initial imposition of conditions," *id.*, the plaintiff requests that this Court explicitly delineate

appropriate procedures that the Parole Commission should have used in this case – namely,

"advance written notice that it intended to impose the condition; disclosure of any evidence

against [the plaintiff]; a hearing at which he could call and cross-examine witnesses and present

documentary evidence; and a written statement of the Commission's findings."  Pl.'s Mem. at 2,

27-28.

　　　　While these suggested procedures appear sensible, the plaintiff requests summary

judgment only on the narrow question of whether he was due more process than he received.[10]

The Court finds that the plaintiff is entitled to summary judgment on that basis.  The Court need

---

[10] In his Opposition to the Motion to Dismiss, the plaintiff implied that he was challenging the defendant agencies' procedures both facially and as applied to himself.  Pl.'s Opp'n at 29 ("[The plaintiff] has not just challenged the application of that policy to himself; he has complained of its ongoing impact on the many others situated similarly to him.").  The plaintiff, however, stated in his Complaint, with respect to his Fifth Amendment procedural due process claim, that he was requesting a judgment against the Parole Commission "declaring that the Parole Commission imposed the Special Sex Offender Aftercare Condition in violation of Mr. Wills' Fifth Amendment right to procedural due process."  Compl. at 18.  Furthermore, the plaintiff has moved the Court only for "summary judgment on his claim . . . that the Parole Commission has violated his Fifth Amendment right to due process."  Pl.'s Mem. at 2.  The Court thus grants the plaintiff's motion for summary judgment on his Fifth Amendment right to due process, and will not prescribe the specific procedures that the Parole Commission must employ in imposing the SOA.

not prescribe the exact set of procedures that the Parole Commission should have employed in this case.  After all, the "plaintiff is not entitled to perfect procedures or the procedures of his choice." *Bagenstose v. District of Columbia*, 503 F. Supp. 2d 247, 257 (D.D.C. 2007) *aff'd,* 07-5293, 2008 WL 2396183 (D.C. Cir. May 27, 2008); *see also Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 610 (1974) ("The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.") (citation omitted); *Inland Empire Dist. Council, Lumber & Sawmill Workers Union, Lewiston, Idaho, v. Millis*, 325 U.S. 697, 710 (1945) ("The requirements [of due process] are not technical, nor is any particular form of procedure necessary.").  That said, the plaintiff cannot be stripped of process altogether, as he evidently was in this case.

## III.   CONCLUSION

For the reasons explained above, the defendants' motion to dismiss is DENIED, and the plaintiff's motion for partial summary judgment is GRANTED.  An order consistent with this opinion shall be issued.


DATED:  July 31, 2012


/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge